THE BOROUGH OF LITTLE FERRY, A MUNICIPAL COR-PORATION OF THE STATE OF NEW JERSEY, PLAIN-TIFF-APPELLANT, v. BERGEN COUNTY SEWER AU-THORITY, DEFENDANT-RESPONDENT.

Argued May 5, 1952—Decided June 2, 1952.

See also 15 *N. J. Super.* 43, 83 *A. 2d* 4.

*Mr. Alfred W. Kiefer* argued the cause for the appellant.

*Mr. Walter H. Jones* argued the cause for the respondent.

The opinion of the court was delivered by

OLIPHANT, J. This appeal involves the constitutionality of the Bergen County Sewer Authority Act, *Laws of* 1946, *c.* 123 (*R. S.* 40:36A–1 *et seq.*), and all actions taken by the Authority thereunder.

The aforesaid act was the culmination of years of effort to deal with the problem of the pollution of the Hackensack River and its tributaries. By *chapter* 300 of the *Laws of* 1945 (*R. S.* 58:15A–1 *et seq.*), the Bergen-Hackensack Sewer Authority was created, but two years later this legislation was declared unconstitutional by the former Court of Errors and Appeals in *Sherwood v. Bergen-Hackensack Sanitary Sewer Authority,* 135 *N. J. L.* 304 (*E. & A.* 1947). As a result the statute under attack here was enacted and the Bergen County Sewer Authority, hereinafter called the "Authority," was created pursuant thereto.

The plans of the Authority specified a sewer disposal plant on property owned by the Borough of Little Ferry, and late in 1948 the borough was advised that approximately 130 acres of its land would be required. This land has been

owned by the borough for many years and it has used portions thereof for its garbage disposal, for emergency drainage and for recreational purposes. A lake on the land has been dedicated and reserved for emergency water supply purposes. Negotiations in respect to the area were had between the parties to no avail, and pending these negotiations the Authority without objection took possession of the property it desired and began the erection of the disposal plant. The Authority is in operation and is treating the sewage of ten municipalities in Bergen County.

Under the purported authority of the Sewer Authority Act the defendant, on September 30, 1949, instituted condemnation proceedings against the Borough of Little Ferry for the acquisition of the property in question and on December 16, 1949, Judge Leyden, as a judge of the Law Division of the Superior Court, entered an order appointing commissioners. From this order the borough appealed to the Appellate Division of the Superior Court attacking the constitutionality of the statute under which the Authority purported to act. The Appellate Division sustained the constitutionality of the act and affirmed the order appointing the condemnation commissioners. *Bergen County Sewer Authority v. Borough of Little Ferry*, 7 *N. J. Super.* 213 (*App. Div.* 1950). From this judgment of the Appellate Division the borough appealed to this court. The appeal was dismissed, without prejudice and without a determination of the constitutionality of the statute, on the ground of lack of jurisdiction in the Appellate Division to review the order appointing the condemnation commissioners. *Bergen County Sewer Authority v. Borough of Little Ferry*, 5 *N. J.* 548 (1950). As a consequence of this decision the borough then instituted a proceeding in lieu of prerogative writ to review the order of Judge Leyden appointing the condemnation commissioners, and in this proceeding the Law Division entered its judgment against the borough and in favor of the defendant Authority. It is from this judgment that the present appeal was taken to the Appellate Division of the

Superior Court and while there pending was certified by this court.

The borough challenges the judgment of the Law Division and in support thereof it sets down and argues six points, the first five of which attack the constitutionality of the act. We will consider them *seriatim*.

■ The first point raised by the borough is that the order appointing the condemnation commissioners was violative of *Art. XI, Sec. IV, par.* 10 of the State Constitution. It is contended that this provision vested the power to appoint condemnation commissioners in the Chief Justice, and that that power could not be exercised by a judge of the Law Division of the Superior Court.

Prior to the adoption of the Constitution of 1947 the eminent domain statute provided for the appointment of condemnation commissioners by. petition to a justice of the Supreme Court or a judge of the circuit court, *R. S.* 20:1–2. The constitutional provision relied upon by the appellant transfers all functions, powers and duties theretofore devolving upon or exercised by the justice and judges of the courts abolished by the Constitution to judges of the Superior Court "until otherwise provided by law or rules of the new Supreme Court." An exception in the provision provides that statutory powers not related to the administration of justice as were then vested in any of the judicial officers enumerated shall after the taking effect of the Judicial Article of the Constitution and "until otherwise provided by law" be transferred and exercised by the Chief Justice.

■ A justice or judge in appointing condemnation commissioners acts as a mere legislative agent exercising a delegated authority. "A statutory jurisdiction [was] not conferred upon the Supreme Court and the several circuit courts, but rather upon the individual justices and judges thereof, *designatio personae,*" *Ryan v. Housing Authority of Newark,* 125 *N. J. L.* 336 (*Sup. Ct.* 1940); *Murray v. Murray,* 7 *N. J. Super.* 549 (*Law Div.* 1950); *Bergen County Sewer Authority v. Borough of Little Ferry, supra.*

The duty of appointing condemnation commissioners is administrative, and after the effective date of the Judicial Article of the Constitution there was enacted *Laws of 1948, c. 375, Sec. 1, par. (e), (i)* and *(l), (R. S. 1:1–22(e), (i)* and *(l))*, to implement the constitutional provisions hereinbefore referred to for the express purpose of relieving the Chief Justice of the administrative duties of making such appointments as are here involved.

The appellant next contends that *R. S.* 40:36A–1 *et seq.*, is violative of *Art. IV, Sec. I, par.* 1 of the State Constitution in that it illegally divests the State of its right to exercise its police power by way of eminent domain and is an unconstitutional delegation of the legislative power. The right of eminent domain has no application to the police powers of the Legislature. *State, Brittin, v. Blake,* 36 *N. J. L.* 442 (*E. & A.* 1872).

The powers of boards of chosen freeholders to create a sewer district are contained in the first paragraph of the first section of the act, which reads as follows:

"Whenever any river or stream flows in, through or along the territory of any first- or second-class county and the natural drainage area of such river or stream within the county includes the territory of more than one municipality in the county and such river or stream is subject to pollution to such degree that, in the judgment of the board of chosen freeholders of the county, the pollution thereof is, or is likely to become, a threat to the public health of the communities within such drainage area, the board of chosen freeholders of such county hereby is authorized and empowered to establish, by resolution, a sewerage district for the purpose of protecting such river or stream from pollution in the county, which district shall consist of the territory of such municipalities, within the county, lying in whole or in part within the natural drainage area of such river or stream, within the county, as the board, in its judgment, shall determine to be practical and convenient to include within such district for such purpose by designation in such resolution, * * *."

The act is a permissive one, it defines the exact powers and limitations of the authority established under it. When a board of chosen freeholders acts to establish a sewer district it is to carry out the legislative will as set forth in the

statute; the authority created has no legislative will of its own.

The borough relies on. the case of *McSweeney v. Equitable Trust Co.*, 16 *N. J. Misc.* 193, 198 *A.* 529 (*Sup. Ct.* 1938), affirmed 127 *N. J. L.* 299 (*E. & A.* 1941), on the ground of estoppel only, with no consideration of other points, and *In re Mechanics Trust Co.*, 119 *N. J. Eq.* 141 (*Ch.* 1935), in support of its argument that the State may not divest itself of its police power, but we fail to see how the appellant derives any comfort therefrom. Neither case constitutes a determinative declaration on the specific point here involved. Those cases, while expounding the doctrine that the State is supreme in the exercise of the police power, do not interdict against a statute such as this which, as stated, grants to the Authority the power to carry. out the legislative will. The power of eminent domain may be delegated by the Legislature to an authority such as this by a general act, *In Matter of Drainage, etc., between Lower Chatham and Little Falls*, 35 *N. J. L.* 497 (*Sup. Ct.* 1872); *State Highway Comm. v. Elizabeth*, 102 *N. J. Eq.* 221 (*Ch.* 1928), affirmed 103 *N. J. Eq.* 376 (*E. & A.* 1928).

The granting to a board of chosen freeholders of power to create a sewerage district when the conditions delineated in the statute are found to exist is not an illegal delegation of legislative power, and in the instant case the sufficiency of the board of freeholders' findings is not questioned. There are numerous statutes in which the Legislature leaves to some other body the task of determining the factual situation which may bring about the exercise of the Legislature's regulatory power, and the validity of such acts has been uniformly upheld. While the Legislature cannot delegate its power to make a law, it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend. *West Jersey and Seashore R. R. Co. v. Board of Public Utility Commrs.*, 87 *N. J. L.* 170 (*E. & A.* 1915); *N. J. State Board of Optometrists v. S. S. Kresge Co.*, 113 *N. J. L.* 287, 292 (*Sup. Ct.*

1934), modified 115 *N. J. L.* 495 (*E. & A.* 1935); *State Board of Milk Control v. Newark Milk Co.,* 118 *N. J. Eq.* 504, 521 (*E. & A.* 1935). In this last case it was said

"The Legislature indubitably has power to vest a large measure of discretionary authority in the agency charged with the administration of a law, enacted in pursuance of the police power, to secure the health and safety of the people. * * * It is only necessary that the statute establish a sufficient basic standard—a definite and certain policy and rule of action for the guidance of the agency created to administer the law. The exercise of such authority is neither legislative nor judicial in a constitutional sense. Tested by these considerations, the act in question does not offend the constitutional inhibition invoked. Compare *Interstate Commerce Commission v. Goodrich Transit Co.,* 224 *U. S.* 194, 32 *S. Ct.* 436, 56 *L. Ed.* 729; *Red "C" Oil Manufacturing Co. v. Board of Agriculture,* 222 *U. S.* 380, 32 *S. Ct.* 152, 56 *L. Ed.* 240; *Panama Refining Co. v. Ryan,* 293 *U. S.* 539, 55 *S. Ct.* 83, 79 *L. Ed.* 645; *Buttfield v. Stranahan,* 192 *U. S.* 470, 24 *S. Ct.* 349, 48 *L. Ed.* 525."

*Cf. Van Cleve v. Passaic Valley Sewerage Com'rs.,* 71 *N. J. L.* 574 (*E. & A.* 1905).

It is further contended that the statute illegally delegates legislative power in that it permits a board of freeholders to set up a sewerage district which the Legislature itself could not do, and that it fails to set up adequate standards. The contention as to the first premise is based on the opinions in *Booth v. McGuinness,* 78 *N. J. L.* 346 (*E. & A.* 1910) and *McCarthy v. Walter,* 108 *N. J. L.* 282 (*E. & A.* 1931). Those cases hold that the Legislature may impose its will by law upon a municipality, but that if some other will is to intervene between the Legislature and such municipality before the law becomes effective, it must be that of the people who are to be governed by the law and not an alien will, even though that will be that of the governing body for the time, being of such municipality. Such questions do not exist in the instant case as there is no requirement in the statute under attack for the submission of the act to the electorate or to a governing body in order to make the act operable. The only requirement is that the municipalities adopt the provisions of the act by entering into contracts with

the Authority when they desire to use its facilities. The act throughout its various provisions gives to the municipalities the power to cooperate with the Authority or refuse to do so. The various municipalities in the district are expressly given the right to construct their own sewerage disposal plants for their own uses and the Authority is prohibited from incurring any indebtedness which would obligate any municipality except to the extent provided in any contract entered into between any municipality and the Authority.

The borough's third point is that the statute in question violates *Art. IV, Sec. VII, pars.* 7 and 8 of the State Constitution in that the legislation is special and of a local character. The assertion is that it attempts to create by evasion and subterfuge an artificial sewerage district which previously it has been held could not be done, *Sherwood v. Bergen-Hackensack Sanitary Sewer Authority, supra.* The contention is without merit. The earlier legislation, which was held unconstitutional in the *Sherwood* case set up a drainage district for the Hackensack River and its tributaries "applicable to only one of the two counties drained by it" while the present act applies equally and without discrimination to all of the populous counties of the State. By section 1 of the act it applies to all of the areas in the entire State in first and second class counties which are subject to pollution. The statute is general in terms, and although as a class the less populous counties of the State are excluded, there is a reasonable basis for this classification. *Cf. Ross v. Board of Chosen Freeholders,* 69 *N. J. L.* 143, 145 (*Sup. Ct.* 1903), affirmed 69 *N. J. L.* 291 (*E. & A.* 1903).

An act designed to remedy conditions affecting the public generally though imposing restrictions or obligations upon a particular area as a means of effecting a larger purpose cannot be said to be local or special legislation in the constitutional sense. *State v. Corson,* 67 *N. J. L.* 178 (*Sup. Ct.* 1901); *State v. Price,* 71 *N. J. L.* 249 (*Sup. Ct.* 1904); *Romano v. Housing Authority of Newark,* 123 *N. J. L.* 428 (*Sup. Ct.* 1939).

■ It is next argued the statute under consideration violates the Fourteenth Amendment to the United States Constitution. The point needs little consideration.

"The act in no wise discriminates against the borough and we fail to discern on what basis it might be held, in this proceeding, to conflict with the equal protection clause. Furthermore, the Legislature in authorizing the creation of regional bodies, such as the Sewer Authority, has ample power to impose their functions upon municipalities which are but creatures of the State (*Jersey City v. Martin*, 126 *N. J. L.* 353, 361 (*E. & A.* 1941)) and are in no position to invoke against it the protection of the Fourteenth Amendment of the United States Constitution. *North Jersey District Water Supply Comm. v. State Water Policy Comm.*, 129 *N. J. L.* 326, 332 (*Sup. Ct.* 1943)." *Bergen County Sewer Authority v. Borough of Little Ferry, supra.*

■ The appellant's fifth point is that the act is unconstitutional and invalid since it invalidates the competitive Bergen County Sewer Authority created in 1933 under *R. S.* 58:15 *et seq.* It is contended that while the 1933 act was repealed by the 1945 statute, that when that latter statute was held unconstitutional in *Sherwood v. Bergen-Hackensack Sanitary Sewer Authority, supra,* the 1933 act was revived and reinstated. This contention has no merit since prior to the decision in the *Sherwood* case there had already been enacted the act now before us which expressly provides by section 61 that as far as the provisions of the act are inconsistent with any other act the provisions of this act shall be controlling. It follows, therefore, that the invalidation of the 1945 act did not operate to revive the preexisting conflicting legislation of 1933. The revival of a statute as the result of a repealing statute being held unconstitutional does not abrogate the power of the Legislature to amend or repeal the statute so revived.

The concluding point made by the borough is that the act as now amended did not and does not authorize the Authority to condemn its public lands, especially those already in public use. It should first be said that the record is devoid of proofs

that any of the borough's lands are being used for municipal public purposes.

At the time of the filing of these condemnation proceedings the act provided by section 36 thereof that the Authority should have full power to acquire lands or rights in lands by condemnation in the manner provided by chapter I of the Eminent Domain Act, *R. S.* 20:1–1 *et seq.* No mention was made in that act of public lands, but even assuming the correctness of appellant's argument it could only apply to the original enactment and whatever deficiency there existed was eliminated by the amendment thereto, *chapter* 20, *Laws of* 1950, which expressly gives authority or right to condemn public lands. While these condemnation proceedings were instituted prior to the enactment of the amendment of 1950 they have not as yet been finally terminated. The law in effect at the time of the disposition of a cause by an Appellate Court governs. *Westinghouse Corp. v. United Elec., etc.,* 139 *N. J. Eq.* 97 (*E. & A.* 1946).

Judgment affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and BRENNAN —6.

*For reversal*—None.