**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4952-17T4

JESSE DENKINS, CHERYL
SHELTON, EMMA WARING,
and MAXINE CAMPBELL,

      Plaintiffs-Appellants,

v.

STATE OPERATED SCHOOL
DISTRICT OF THE CITY OF
CAMDEN,

      Defendant-Respondent.

_____

> Argued May 21, 2019 – Decided August 27, 2019
>
> Before Judges Rothstadt, Gilson and Natali.
>
> On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0221-17.
>
> Andrew L. Schwartz argued the cause for appellants (Schwartz Law Group, LLC, attorneys; Andrew L. Schwartz and Robert M. Schwartz, on the briefs).
>
> Richard L. Goldstein argued the cause for respondent (Marshall Dennehey Warner Coleman & Goggin,

attorneys; Richard L. Goldstein, of counsel; Walter F. Kawalec, III, on the brief).

PER CURIAM

Plaintiffs Jesse Denkins, Cheryl Shelton, Emma Waring, and Maxine Campbell appeal from a June 29, 2018 Law Division order dismissing their complaint against defendant State Operated School District of the City of Camden (District) under Rule 4:6-2(e).

The genesis of this case can be found in the June 2013 State takeover of the Camden public school system, which resulted in the District's creation and substitution for the Camden City School District as the educational authority in Camden (the takeover). See N.J.S.A. 18A:7A-34 to -53.1. Plaintiffs were tenured principals or vice principals hired by the District's predecessor who remained in the District's employ following the takeover. One of the District's employees, who was prohibited from working by a New Jersey State Department of Education (DOE) regulation in force during the 2013-2014 academic year, evaluated plaintiffs' effectiveness as school leaders and gave them poor ratings, which plaintiffs alleged led to their resignations. Plaintiffs did not learn that the evaluator was prohibited from working in the District until after they resigned. Before they filed suit, however, the regulation at issue was repealed.

In granting the District's motion to dismiss, the motion judge applied the general rule that repealed laws typically are treated as if they never existed. The judge concluded that since the regulation prohibiting the evaluator from working was repealed, plaintiffs failed to state a claim upon which relief could be granted. Because we conclude that disregarding the law in force at the time of the evaluations would impermissibly interfere with plaintiffs' then-vested tenure rights, and would result in a manifest injustice, we reverse and remand.

I.

We review rulings on Rule 4:6-2(e) motions de novo, and apply the same standard that governs the motion judge's initial decision. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). That standard "requires an assumption that the allegations of the pleading are true and affords the pleader all reasonable factual inferences." Seidenberg v. Summit Bank, 348 N.J. Super. 243, 249-50 (App. Div. 2002). If a "cause of action can be gleaned even from an obscure statement" in the pleading, the motion should be denied. Id. at 250. Construed in that light, the record before us establishes the following pertinent facts.

In preparation for the 2013-2014 academic year, the District sought to hire School Leader Trainers and Evaluators (evaluators) to evaluate the

effectiveness of its administrators, including plaintiffs, on a scale of one to four, with one being "ineffective," two being "partially effective," three being "effective," and four being "highly effective." One of the advertised requirements to work as an evaluator was "a valid school administrator license in the State of New Jersey." The District's lead evaluator was responsible for vetting "quality professionals who could actually do the [evaluation] work," and for reviewing the "credentials and experience" of applicants "prior to their being offered employment contracts" as evaluators.

Angela Gilbert applied for a position as an evaluator on August 21, 2013. In her application, and in response to the question "whether she maintained a New Jersey certificate," Gilbert stated that a "certificate is anticipated," but that she did "not currently possess a New Jersey certificate." The District offered Gilbert employment as an evaluator on September 25, 2013. The offer was "contingent" upon the approval of the District's Superintendent "and a successful completion of background clearance, including that she possess appropriate New Jersey certificates and licenses." Gilbert accepted the offer, and her effective hire date was October 23, 2013.

Throughout the 2013-2014 school year, DOE regulations provided that:

> (a) A certificate of eligibility (CE) is a certificate
> with lifetime validity that the Board of Examiners may

issue to candidates who meet degree, academic and applicable test requirements.

. . . .

(c) The CE . . . authorizes the holder to seek employment. A holder of a CE . . . <u>shall not assume responsibility for a job assignment until the holder has been issued a provisional certificate</u>.

[N.J.A.C. 6A:9-6.4 (2013) (emphasis added).]

Gilbert had a CE when she was hired, but has never been issued a provisional certificate. Nevertheless, between December 2013 and June 2014, Gilbert evaluated Campbell, Denkins, and Waring once, and Shelton twice, and gave them all "partially effective" ratings.

The District had previously advised plaintiffs that if they received less than an "effective" average score on three evaluations, at the end of the school year they would be "subject to tenure charges of inefficiency in which the . . . District would seek to terminate their employment," which presented "risks" of "adverse consequences" to plaintiffs' educational certificates and pension benefits. Believing that the District "fully intended to pursue tenure charges of inefficiency against her with its attendant risks as to her pension benefits and educational certificates," Campbell resigned shortly after she received her evaluation from Gilbert. Shelton, Denkins, and Waring all received average

evaluations scores on their three observations that were "less than effective." The District told Waring that it "would file tenure charges of inefficiency" against her. "As a result of learning that tenure charges of inefficiency were to be filed, with its attendant risks as to her pension benefits and educational certificates," Waring resigned. Defendant filed tenure charges against Shelton and Denkins, who resigned for the same reasons as Waring and Campbell.

As part of an "administrative recodification" process that divided N.J.A.C. 6A:9 into "four separate categories," the regulatory provision prohibiting employees from working without a provisional certificate was repealed, and the prohibition itself was re-codified at N.J.A.C. 6A:9B-6.4(c) effective August 4, 2014. See 46 N.J.R. 1743(a) (Aug. 4, 2014); N.J.A.C. 6A:9B-6.4(c) (2014). Six months later, Gilbert was deposed in a contested tenure case where she "falsely testified" that she received a provisional school administrator certificate "probably in the fall of 2013," when, "in fact," she "knew or should have known that had she never received it." Plaintiffs first learned that Gilbert lacked a provisional certificate around the time of her deposition, and the District later "acknowledged" that Gilbert "had never been qualified to observe and evaluate its principals and vice principals."

A-4952-17T4

N.J.A.C. 6A:9B-6.4 was repealed effective December 7, 2015, at which time N.J.A.C. 6A:9B-12.4(d) was adopted to provide that "[t]he effective date of provisional certificate issuance shall be the date on which the CE holder begins employment with the district board of education in a certificated position in accordance with N.J.S.A. 18A:26-2 and 18A:27-4a." See 47 N.J.R. 1730(a) (July 20, 2015); 47 N.J.R. 2989(a) (Dec. 7, 2015). Three months later, plaintiffs filed a complaint in the United States District Court for the District of New Jersey against the District, its Superintendent, and Gilbert pursuant to 42 U.S.C. § 1983, alleging deprivations of due process and asserting state and common law tort claims.

In granting the defendants' motion to dismiss, the court held in an unpublished opinion that the District and its Superintendent were entitled to sovereign immunity under the Eleventh Amendment, and that Gilbert was entitled to qualified immunity on the federal claims,[1] then declined to exercise supplemental jurisdiction over the remaining state and common law claims. With respect to Gilbert, the court concluded that under New Jersey law, a

---

[1] The qualified-immunity analysis has two prongs: 1) whether the facts "make out a violation of a constitutional right"; and 2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). The district court based its decision on the first prong.

repealed regulation must be treated as if it never existed, so plaintiffs "cannot plausibly allege that there was a material misrepresentation, or even a misrepresentation at all" with respect to Gilbert's credentials since the regulation requiring a provisional certificate never existed.[2]  Accordingly, the court held that plaintiffs resigned voluntarily and, as such, were not unconstitutionally deprived of any property right.

Plaintiffs appealed to the United States Court of Appeals for the Third Circuit, which affirmed, but with respect to Gilbert, did so based on the second qualified-immunity prong, i.e. whether a reasonable person in her position would have understood that her actions were unlawful.  In deciding to affirm on different grounds, the Court of Appeals explained that plaintiffs "may well make out a constitutional due process violation in having been deprived of a property interest in continued tenure[-]protected public employment . . . by the

---

[2]  The district court reached this conclusion by relying on the following portion of a sentence in Kemp by Wright v. State, County of Burlington, 147 N.J. 294 (1997): "In this State it is the general rule that where a statute is repealed and there is no saving[s] clause or a general statute limiting the effect of the repeal, the repealed statute, in regard to its operative effect, is considered as though it had never existed . . . ."  Id. at 311 (first alteration in original) (quoting Parsippany Hills Assocs. v. Rent Leveling Bd., 194 N.J. Super. 34, 42 (App. Div. 1984)).  The portion of the sentence that the district court omitted from its analysis is an exception to the general rule, i.e., "except as to matters and transactions passed and closed."  Ibid. (quoting Parsippany, 194 N.J. Super. at 42).

A-4952-17T4

District having obtained their involuntary resignations" through deception or misrepresentations of material fact, but declined to rule on that issue. Instead, the court exercised its discretion to begin the analysis with prong two, and concluded that Gilbert was entitled to qualified immunity because there was no precedent factually similar to plaintiffs' allegations sufficient to put her "on notice that evaluating the [p]laintiffs after the District knowingly hired her without a license might amount to a due process violation."

On January 13, 2017, while the appeal was pending before the Court of Appeals, plaintiffs filed a nine-count complaint in the Law Division against the District alleging: negligent and reckless hiring (counts one and two); negligent, reckless, and fraudulent misrepresentation (counts three, four, and five); negligent, reckless, and fraudulent filing of tenure charges (counts six, seven, and eight); and tortious interference with prospective economic advantage (count nine). After the Court of Appeals rendered its decision, defendant moved to dismiss plaintiffs' complaint under Rule 4:6-2(e).

Following oral argument, during which plaintiffs' counsel conceded "[w]e wouldn't have a case" if Gilbert had a provisional certificate, the motion judge reserved decision, and plaintiffs moved to amend their complaint to add a claim for respondeat superior. In an April 12, 2018 order, the judge granted

defendant's motion to dismiss counts three through nine of plaintiffs' complaint based primarily on the law of the case doctrine, but denied the motion with respect to plaintiffs' claims for negligent and reckless hiring. Accordingly, plaintiffs' motion to amend was not affected by that order.

In a May 11, 2018 order, the motion judge denied plaintiffs' motion to amend, and the parties filed cross-motions for reconsideration of the judge's several decisions. The judge initially denied all of the motions, but following a case management conference on June 25, 2018, the judge held a re-hearing on the motions for reconsideration and granted the District's motion, denied all of plaintiffs' motions, and dismissed the complaint. Plaintiffs now appeal from the June 29, 2018 order memorializing those decisions.

II.

On appeal, plaintiffs argue that the motion judge mistakenly applied the law of the case doctrine by overlooking exceptions to the general rule that repealed laws typically are treated as though they never existed. In Parsippany, we explained that:

> In this State it is the general rule that where a statute is repealed and there is no saving clause or a general statute limiting the effect of the repeal, the repealed statute, in regard to its operative effect, is considered as though it had never existed, except as to matters and transactions passed and closed. DiAngelo v.

> Keenen, [112 N.J.L. 19, 20–21 (Sup. Ct. 1933)], aff'd o.b. [115 N.J.L. 507 (E. & A. 1935)]. Furthermore, it is settled law in this State that, unless vested rights are involved, the law in effect at the time of the disposition of the cause by an appellate court governs, rather than the law in effect at the time the cause was decided by the trial court. Staudter v. Elter, 64 N.J. Super. 432, 436, 166 A.2d 394 (App. Div. 1960).
>
> [Parsippany, 194 N.J. Super. at 42-43.]

Plaintiffs maintain the general rule discussed in Parsippany is inapplicable here because their evaluations are matters or transactions "passed and closed," and their "vested rights" of tenure are so "involved" in this controversy that "the rules in effect during the 2013-14 school term should govern this dispute." Plaintiffs also argue that it would result in a "fundamental unfairness" to give "retroactive application" to the "changes to laws" that occurred after their evaluations and resignations. Alternatively, plaintiffs contend that they state a cause of action even under the current regulations.

According to defendant, however, the motion judge correctly adopted the federal district court's reasoning because this case is still being litigated, and thus is not a matter or transaction "passed and closed." In addition, defendant contends that whether plaintiffs had "vested right[s] of tenure" is "irrelevant" because plaintiffs "had no vested right in having their evaluations

11

performed by specific evaluators." Finally, defendant argues that plaintiffs are not only precluded from relying on the law in force during the 2013-2014 academic year, but that plaintiffs waived any claims they may have under the current regulations.

## III.

Under the law of the case doctrine, "decisions of law made in a case should be respected by all other lower or equal courts during the pendency of that case." Brown v. Twp. of Old Bridge, 319 N.J. Super. 476, 494 (App. Div. 1999) (quoting Lanzet v. Greenberg, 126 N.J. 168, 192 (1991)). The doctrine is a "discretionary rule of practice and not one of law," ibid., it is "restricted to preventing relitigation of the same issue in the same suit," ibid. (quoting Slowinski v. Valley Nat. Bank, 264 N.J. Super. 172, 180–81 (App. Div. 1993)), and it "should not be used to justify an incorrect substantive result." Hart v. City of Jersey City, 308 N.J. Super. 487, 498 (App. Div. 1998).

As a threshold matter, the federal district court's decision was not binding on the motion judge under the law of the case doctrine. See Lusardi v. Curtis Point Prop. Owners Ass'n, 86 N.J. 217, 226 n.2 (1981) (noting that the law of the case doctrine "applies only to proceedings prior to the entry of a final judgment. After that, rules of res judicata determine whether a prior

12

determination of law or fact is binding."); see also Ayers v. Jackson Twp., 106 N.J. 557, 611-12 (1987) (holding the trial court's decision to "re-examine[] [an] issue" decided in "a related case in the federal district for the District of New Jersey" was "not improper"), aff'g in part and rev'g in part on other grounds, 202 N.J. Super. 106 (App. Div. 1985).[3]  In addition, because the United States Court of Appeals explicitly decided to affirm on different grounds than the federal district court did with respect to Gilbert, it was error to apply the "law of the case" doctrine to the federal district court's decision.

Further, whether the motion judge abused his discretion in adopting the federal district court's reasoning depends on whether that reasoning was adopted "to justify an incorrect substantive result." See Hart, 308 N.J. Super. at 498.  The substantive result here is that plaintiffs were precluded from establishing that defendant permitted Gilbert to work in violation of the regulatory prohibition against "assum[ing] responsibility for a job assignment" without a "provisional certificate," see N.J.A.C. 6A:9-6.4(c) (2013), because the judge determined that prohibition never existed.  Plaintiffs conceded in the

---

[3]  Other than the law of the case doctrine, the District has not alleged that the federal litigation barred plaintiffs from filing suit in state court by reason of collateral estoppel, res judicata, the entire controversy doctrine, or any other similar legal principle.

proceedings below that they "wouldn't have a case" if Gilbert had a provisional certificate, and they do not retreat from that concession on appeal. Similarly, defendant concedes that a violation of N.J.A.C. 6A:9-6.4(c) would have provided plaintiffs with a defense to the tenure charges.[4] Thus, the question before us is whether the motion judge, by treating the regulation as if it never existed, improperly precluded plaintiffs from claiming that Gilbert lacked the credentials necessary to work during the 2013-2014 academic year.

As noted, the parties dispute whether this case involves a matter or transaction "passed and closed," see Parsippany, 194 N.J. Super. at 42 (citing DiAngelo, 112 N.J.L. 20-21), an issue which plaintiffs raised before the motion judge, but which the judge did not address in rendering his decision. Defendant contends that Kemp supports its position that the present controversy does not involve a matter or transaction "passed and closed."

In Kemp, a health official working for the defendant municipality injected a rubella vaccine into the plaintiff's mother while she was pregnant with plaintiff. Id. at 297-98. At the time of the injection, the health official

_____

[4] The defense referred to by defendant is found in N.J.S.A. 18A:6-17.2(d), which provides that "[t]he board of education shall have the ultimate burden of demonstrating to the arbitrator that the statutory criteria for tenure charges have been met."

was entitled by statute to good-faith immunity. Id. at 297, 304. Plaintiff was born with health problems traceable to the injection, and when he was six months old, the good-faith immunity statute was repealed. Id. at 298, 304. The Court held that because the plaintiff "was less than six months old when the statute was repealed," the case could not "be regarded as a transaction 'passed and closed.'" Id. at 311 (quoting Parsippany, 194 N.J. Super. at 42). Thus, because the infant plaintiff had a putative tort claim when the statute was repealed, the health official who administered the rubella vaccine could not invoke the good-faith immunity defense granted by the repealed statute. Applying that rationale here, because plaintiffs had a putative tort claim when N.J.A.C. 6A:9B-6.4(c) was repealed, this case would not involve a matter or transaction "passed and closed."

However, the rule that repealed statutes are disregarded except as to matters and transactions passed and closed "is subordinate to the fundamental rule of construction that the court shall ascertain and give effect to the intention or purpose of the Legislature." DiAngelo, 112 N.J.L. at 21; see also Kemp, 147 N.J. at 311-12 (determining there was no transaction passed and closed, then proceeding to discuss the Legislature's "most likely" intent). Further, the "acquisition of vested rights" gives rise to "an exception to the

general rule which permits legislative bodies to . . . repeal laws." State v. Mayor of Jersey City, 49 N.J.L. 303, 307 (Sup. Ct. 1887); see also State Troopers Fraternal Ass'n of New Jersey, Inc. v. State, 149 N.J. 38, 54 (1997) ("In analyzing whether a statute or regulation may apply retroactively, a court must determine, first, whether the Legislature or agency intended that the statute or regulation apply retroactively, and, if so, whether retroactive application would work either a manifest injustice or an unconstitutional interference with a vested right."); N.J.S.A. 52:14B-2 (defining "[a]dministrative rule" to include the "repeal of any rule").

As noted, the only expression of legislative intent for repealing N.J.A.C. 6A:9-6.4 (2013) was the intent to re-locate the same provisions at a different section of the administrative code during an "administrative recodification" process. 46 N.J.R. 1743(a) (Aug. 4, 2014); see N.J.A.C. 6A:9B-6.4(c) (2014). When a law is simultaneously repealed and re-enacted, the law has continuing force. Randolph v. Larned, 27 N.J. Eq. 557 (E. & A. 1876).

Further, the DOE "propose[d] to repeal N.J.A.C. 6A:9B-6 because definitions for the types of certificates" were "proposed for inclusion at N.J.A.C. 6A:9-2.1 in a separate rulemaking." 47 N.J.R. 1730(a) (July 20, 2015). However, the prohibition against working without a provisional

certificate was not included in N.J.A.C. 6A:9-2.1. Instead, N.J.A.C. 6A:9B-12.4(d) was adopted to provide that "[t]he effective date of provisional certificate issuance shall be the date on which the CE holder begins employment with the district board of education in a certificated position in accordance with N.J.S.A. 18A:26-2 and 18A:27-4[(a)]." Ibid. The stated purpose for this new rule was to "align" the "effective date of the provisional certificate issuance" for school administrator CE holders "with the same provisional requirements for teachers at N.J.A.C. 6A:9B-8.3." 47 N.J.R. 1730(a) (July 20, 2015). Although the content of this new rule contemplates retroactivity, in the sense that it retroactively fixes the effective date of the issuance of provisional certificates, there is no indication that the implicit change in when certain CE holders may begin job performance was intended to affect CE holders like Gilbert who never obtain a provisional certificate.

Moreover, plaintiffs maintain that their "vested rights of tenure protected [their] employment from termination absent tenure charges or indictment," and claim "vested rights" are sufficiently "involved" here that "the rules in effect during the 2013-14 school term should govern this dispute." We agree.

The term "'vested right' encompasses a fixed interest entitled to protection from state action." Twiss v. State, Dep't of Treasury, Office of Fin.

Mgmt., 124 N.J. 461, 470 (1991). "[T]enure is a statutory right imposed upon a teacher's contractual employment status," the purpose of which is to give job security to educators by protecting them "against removal for unfounded, flimsy, or political reasons." Zimmerman v. Bd. of Ed. of City of Newark, 38 N.J. 65, 71-72 (1962). Simply put, tenure rights are entitled to protection from state action, and plaintiffs' tenure rights vested prior to their evaluations.

Resolving all reasonable inferences from plaintiffs' allegations in their favor, plaintiffs forfeited their vested right to challenge Gilbert's evaluation and any ensuing tenure charges[5] because they believed the risk to their pension benefits and educational certificates attendant to losing a contested tenure case outweighed any defense they might have had to the charges. The District concedes that a violation of N.J.A.C. 6A:9-6.4(c) would have furnished at least a plausible defense to tenure charges,[6] and plaintiffs alleged the District made factual representations that led them to believe that defense was unavailable.

Plaintiffs also alleged that they relied on the District's representations to their detriment, and it is reasonable to infer that the alleged representation

---

[5] See N.J.S.A. 18A:6-10 (entitling tenured faculty to a hearing on charges of inefficiency prior to dismissal).

[6] See supra p.14 n.4.

materially affected plaintiffs' decisions as to whether to enforce or forfeit their vested right to challenge the charges. Thus, the only remaining issue as to whether plaintiffs stated a claim upon which relief can be granted is whether the District made those factual representations knowing that they were false. See Jewish Ctr. of Sussex Cty. v. Whale, 86 N.J. 619, 624 (1981) ("A misrepresentation amounting to actual legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment.").

Under these circumstances, to hold, as the motion judge did, that plaintiffs may not demonstrate the falsity of the District's factual representations would impermissibly subject plaintiffs' then-vested tenure rights to improper state action. We decline to do so.[7] As noted, notwithstanding the retroactive content of the regulation, the regulatory history does not reveal an intent for the change in law to apply to a person in Gilbert's circumstances. In addition, precedent supports the view that if a person who is

---

[7] Accordingly, we reject the District's contention that the time-of-decision rule referenced in Parsippany supports the motion judge's determination, since that rule is inapplicable when "vested rights are involved . . . ." See Parsippany, 194 N.J. Super. at 42-43.

19

disqualified by law from working without certain credentials nevertheless performs the work, a subsequent repeal of the disqualifying law does not alter the fact that the person was, in fact, disqualified from working while the law was in force. See Vaughn v. Hankinson's Adm'r, 35 N.J.L. 79, 80-82 (Sup. Ct. 1871).[8]

Further, if a "party relied, to his or her prejudice, on the law that is now to be changed as a result of the retroactive application of the statute, and . . . the consequences of this reliance are so deleterious and irrevocable that it would be unfair to apply the statute retroactively," applying the change in law retroactively would result in a manifest injustice. See Gibbons v. Gibbons, 86 N.J. 515, 523-24 (1981). After reviewing the pleadings, we conclude that plaintiffs have sufficiently alleged detrimental reliance on the prohibition against working without a provisional certificate. We are convinced it would work a manifest injustice to apply the changes in the administrative code retroactively, as doing so would denigrate the value of tenure rights and permit allegations of fraud to be unaddressed.

---

[8] See also In re Gadbois, 786 A.2d 393, 397 (Vt. 2001) (stressing "this case deals with standards of professional regulation that are no longer in force"); cf. Teas v. Eisenlord, 253 N.W. 795, 797 (Wis. 1934) (whether a defendant's "conduct measures up to the standard of ordinary care is to be determined by the circumstances present at the time of his [or her] action").

In light of our decision, we do not reach plaintiffs' alternative claim that a provisional administrative certificate is a prerequisite to performance of job duties under the current regulations. Further, the District's argument that plaintiffs waived this issue is meritless as that contention is belied by the record. In addition, with respect to defendant's passing statements in its brief that plaintiffs failed to exhaust their administrative remedies, to the extent defendant sought to raise that argument on appeal, the issue is not properly before us for two reasons.

First, the District did not raise that argument below, but instead argued that plaintiffs should have exhausted the remedies purportedly available through the Worker's Compensation Act, an argument the motion judge rejected and which defendant does not reassert on appeal. Second, by making only passing references in its appellate brief to plaintiffs' purported failure to exhaust administrative remedies, defendant did not properly raise the issue on appeal. See Mid-Atl. Solar Energy Indus. Ass'n v. Christie, 418 N.J. Super. 499, 508 (App. Div. 2011); R. 2:6-2(a)(6); R. 2:6-4(a). Nonetheless, nothing in this opinion precludes the District from arguing in ensuing proceedings that plaintiffs failed to exhaust their administrative remedies prior to filing suit, or from raising any other argument.

A-4952-17T4

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION